May it please the Court, Darren Quinn for Plaintiff Appellate, Greg Young Publishing, Inc. In a very real sense, the decision of this panel will either promote the Copyright Act's goal of creation of copyrighted works, or it will encourage the infringement of them by Zazzle and other infringers. Collectively, Plaintiff's 35 fine art paintings at issue at trial took two to three years to hand-paint. In contrast, the videos lodged with this panel show that Zazzle was able to make infringing copies on various physical goods in a matter of minutes. Well, no one doubts in this case that Zazzle infringed the copyright, at least as to the District Court thought there was insufficient evidence of willfulness. So tell us why the District Court was wrong on that. The District Court was wrong because the standard is to search the record for substantial evidence of willfulness. And so we have the 12 written notices of infringement that includes all a jury instruction that has four non-exclusive non-willfulness factors that's supported by Ninth Circuit law, and we have substantial evidence on each of those. So there's substantial evidence. What Zazzle and the District Court did, instead of saying points 1 through 10 constitute substantial evidence, they said, but look at points 11 through 20 that could support non-willful. As a matter of law, what could support non-willful is irrelevant. The only thing that's relevant on this motion for judgment is whether or not there's any substantial evidence and there was abundant evidence. Again, tell us what the abundance of evidence was. I mean, that's the standard, but tell us, applying the standard to this case, tell us why the District Court ended up finding there wasn't enough evidence to go to the jury on willfulness. Fair enough. I'm going to highlight for him, it's all on opening pages 12 through 21, but I think some of the most important evidence is the 12 notices of infringement and written notices and the law is very clear that this is the most persuasive evidence of willfulness. Well, we're only talking about willfulness here on four works, five works? Five works. Five works. I couldn't tell, I think I could tell, but I want to be sure about this. In terms of the notices of infringement, where do the five works fall? Are they at the end, in the middle, at the beginning? You know, the easiest way to do it, if you look on pages 8 or 9, you're going to see a... 8 or 9 of? The opening brief, and you're going to see a footnote that lists all the 12 notices. Right. Okay. And the one I really want to focus on is... Well, but see if you can help me. I know there's a footnote that lists the 12 notices. Which of the, which of the five of the, which of those 12 notices pertain to the five works on which the jury implicitly found willfulness? All right, so absolutely the fifth one, October 3rd, 2013, because that attaches every single one of the 35 works that was at issue at trial. Absolutely. But were the infringements on those five works after that fifth notice? Oh, yes. It was before the lawsuit. So we had... No, I understand. I want to be clear what I'm trying to figure out. It's one thing to say it's willfulness because I told you not to do it and you continued to do it. If you did it before I told you not to do it, it may be harder to show willfulness. So I'm trying to figure out when you told them not to do it with respect to these five works and when they infringed. Yes, that's an excellent question. And if you look at the footnote, you'll see they had the catalog with all of the images, October 3rd, 2013. And then we have this actual lawsuit, which is 2015 or 16. I'm not exactly sure on that. After October 3rd, 2013, you just need to step back a little bit. Yes. I think you're thinking we're trying to trick you with some questions here. We just want you to lay out your case. And so after that October date, did they continue in reproducing these images? They did. All right. How many times? Because that goes to support the intent or the willfulness aspect and to show that you have abundance evidence of that. That's all. I think what Roberts is asking, and I'm curious what your best case is for that. So if you look at the footnote on pages eight and nine of the opening brief, you're going to see 12 different written notices. So each of those is going to address at least one or two or more of the infringements at trial. The number five attaches the catalog. That's all 35. So my question is, I'm not being clear. I think Judge McGee is attempting to make my question clear, and I'm still not sure you're getting it. The infringements on these five particular works occurred at a particular point in time, did they not? In other words, they put these works up on their website at some point in time. Yes? Yes. Okay. Was that point in time after you had notified them about these particular works being copyrighted? Some of them were, yes. Okay. Which ones were and which ones weren't? That's what I'm trying to figure out. Okay. For all five, there would be notice and there was infringement thereafter. Okay. So I don't want to ask the other side the same question. It seems to me that might be good evidence of willfulness. If I gave you notice before and you infringed thereafter, that's different than if I gave you notice that you previously infringed and I want you to take it down. So that's why I'm asking this question. Do you understand? Yes. Okay. And is that true about the catalog also? In other words, were these five items for which the jury implicitly found willfulness posted on the website after the catalog was provided to you? Yes. Yes. Okay. I can't tell that from the briefing without additional information and that's why I'm asking. No, I understand and I don't have an ER site handy, but there's... No, you have ER sites here for testimony and other stuff. I'm just trying to get the chronology straight. Okay. So going back on this, like I said, we've got seven written notices before the lawsuit, then we filed the lawsuit, and we've got four more written notices of infringement. And now during the pendency of this appeal, we've got three pending requests for judicial notice that show four more infringements. So is it any wonder at trial that the jury finds 35 out of 35 infringed and awards enhanced willful damages on five of the works? Well, the jury couldn't have relied on the three that occurred during dependency of this appeal. No, that's true. They don't help you. No, but it's a data point that you just can't follow. No, it's a prejudicial fact, but it doesn't have anything to do with the jury verdict. Yeah. So what we have is this is exactly the kind of case that the Supreme Court in curtsying v. Wiley encouraged plaintiffs to, quote, litigate the case all the way to the end to further the purposes of the Copyright Act. Now the problem is this. Plaintiff is exponentially upside down, and Zazzle has almost no risk of ever being taken to trial again for infringement, all because of the district court's erroneous rulings that, one, nullified the jury's willful infringement. Okay. And if you were to reverse that, you would add how much to the judgment? Almost $110,000. Okay. Okay. And then, of course, there's another one, economically, that puts them upside down, and that's the complete denial of attorney fees. Okay. And that's what I wanted you to turn to next, so thank you. So the attorney fees is actually really easy, because what we have is we have an opinion denying attorney fees, then we have a notice of appeal, and then we have this panel's decision in Glacier Films, and then we have the new Reid decision that we supplied to you last week. So how do we review the district court's denial of fees? Under what standard of review? So normally it's abusive discretion, but with respect to the court giving additional guidance on the appropriate standards, that's always de novo. Let me ask you, so it looks like your opponent was arguably very successful at defending this lawsuit. You only recovered about 16% of what you sued for at trial, and many of your client's claims were defeated on summary judgment. Your opponent also defeated your summary judgment motion on your client's DMCA claim, which is, I think, presumably why you dropped that claim at trial. And at trial, the jury found willful infringement of only five out of the 35 works at issue. So given these points, why should we force your, and arguably victories, why should we force your opponent to pay your client's attorney's fees? Well, number one, on the summary judgment, we brought the summary judgment, and we were successful in showing that the DMCA absolutely doesn't apply to physical goods. But on eight of the works that you contended were infringed, the court ruled against you, did it not? That was not the ones at trial. I understand. That was the Westmoreland ones. You had eight additional works in your original complaint, and the court said no, so I'm ruling against you on them. Right, and we didn't seek fees on those. Well, I guess I'm just trying to figure out, you know, if there's a case, or if you know a case where a defendant had this arguably high degree of success and was still forced to pay attorney's fees. I mean... So, if you look at Glacier Films and now the Reed case, the amount of the statutory damages is completely irrelevant. What matters is we got 35 out of 35 on liability. Well, but Dave, when was the offer of judgment made in this case? Well, there's three of them, but the last one was maybe three weeks before trial. When was the first one made? Early on in the case. How big was it? Like 18,000 or so, I think. Yeah, it was relatively low. The second one was made, was how big? It was lower. I'm not sure if it made it six digits, six figures or not. So, but when we look at the third one, it's made three weeks before trial, and can't the judge look at that and say, you put everybody through a trial to recover more than the offer of judgment, when in fact, you recovered substantially less than it? No. If you read, and I appreciate that, if you construe the Rule 68... 68 doesn't talk about that. I'm not... Okay. 68 talks about costs. I'm saying, can't the judge say, in effect, this whole trial was for no good purpose because if you had accepted the offer of judgment, you would have recovered both your attorney's fees and the amount of infringement? But no, that's not what they're saying now. That's what they offered, but now they backtrack on that. And then what's even more important... I don't care what they're saying. I'm saying something. Okay. Listen to what I'm saying. Okay. I'm saying, can't the district judge look at this and say, hmm, these guys in the end recovered... You know, he has a lower number, obviously, because he's taken away the willfulness. Recovered this, and they spent a whole bunch of time at trial trying to recover 10 times more, and of all the attorney's fees they incurred after the offer of judgment, Strike Me is not reasonably incurred. Okay, so two issues. One, Glacier Films, all you look at is liability, and then if you're concerned about, oh, we sought more than we collected, that's what Rule 68 is for, but that's not what Rule 505 is for. You think a district judge is prohibited from looking at an offer of judgment? Under Glacier Films? Absolutely. Does Glacier Films say that? It says, in determined degree of success, you look at liability, not amount of damages. But is there a case that says a district judge is prohibited from looking at an offer of judgment when determining whether fees incurred thereafter are reasonable? I hope this will be that case. I think Glacier Films says it. So I have a minute left, but I'll answer whatever ones you want. Yes, because we get to decide that. Absolutely. We've held many times that under Rule 68, if the defendant's settlement offer is higher than the amount recovered at trial, the plaintiff has to pay the defendant's cost from that date of the offer. So I guess in your case, in this case, your client only recovered at trial, I guess it's roughly two-thirds of what your opponent offered in its July settlement offer. So given that the settlement offer was higher than the recovery at trial, shouldn't we order your client to pay your opponent's cost? No. One, there's case law that says that's not how it works. Two, properly construed, we exceeded the monetary value by over $180,000. And three, this is most important, so I'm going to spend my last seconds on this. Zazzle's Rule 68 says, oh, we'll give you an injunction, but really what it was, it was a license to infringe. And that completely eliminated plaintiff's future Copyright Act remedies. As a matter of law, there's no judge that had the power to say, in the future, you're barred from any Copyright Act remedies in the future for future infringement. That's exactly what it did. Probably apart from the Rule 68 offer, could the judge have concluded that both sides were somewhat successful and order each to bear their own costs? Not under... But because they did defeat some of your claims. Under Glacier, we have liability on 35 out of 35 that went to trial. So the Glacier says you count the number and... Yes. And if you went on more than they went on, you're the successful party? On liability, that's what I understand. Glacier says that? It says, you look at degree of success. They had, on each of those, they had one. All right, so that was total success. In Reed, there was one that was total success. We have 35 out of 35 as total success at trial. You need to look at where we went. We went to trial. See, I don't understand Glacier to make the trial summary judgment dichotomy that you have. You said, well, we lost on some summary judgment ones, but we won on the ones at trial, and therefore, we ought to get... We were the prevailing party for purposes of costs. Can't a district judge say, I dismissed some claims early. They won on those. You won on some others. And so I'm going to make each side bear, in effect, pay the other side's costs. What's wrong with that? Putting aside the offer of judgment. If there was a... The Westmoreland was an issue of standing, so it wasn't actually precluded on the merits. So there's no preclusion that there was no copyright claim. There's just a standing issue, more of a technicality. And then on the other three, there was actually 38. There were three that were no sales, but there was display only. But to simplify the trial and streamline it, we didn't inject those issues into the trial. We went to trial on the 35 out of 35 strong ones, which is exactly what the Supreme Court in curtsying says we should do to further the purposes of the Copyright Act. Okay. Thank you. Thank you. Thank you. Thank you, Your Honor, and may it please the Court. The District Court carefully... Your name? I'm sorry. Stefan Johnson on behalf of Zazzle. The District Court carefully and correctly resolved every issue before this Court. I'd like to focus principally on the willfulness issue, and I'd like to begin with the legal standard and then talk about the record at some length. Recklessness is good enough, is it not? Recklessness is good enough under this Court's precedence. Okay, so... On the legal standard. So here's my problem. So you were starting on the issue where I think you have the most difficulty, so let me pose my problem to you. They send you the catalog with all the works in it and say you've been infringing for a while. Please stop. Here's all of our works. And then you continue to infringe on the five works that are involved in this case. And if your friend is right, and I think he is because I asked that question because I try to work the notices, you infringed on works even after you got a notice that a prior infringement had occurred. Why isn't that enough to show recklessness? Notice is necessary for a finding, obviously, but it's not sufficient. But can't we infer from the fact that thereafter your client just continued to infringe, not only being told, but being in pictures of the stuff? Why isn't that enough for a jury to find that you acted recklessly? Not at all, Your Honor. And I'd like to walk the court through the Lee testimony on which their case was largely based because virtually all of the evidence in this case is undisputed. And if I could just make one legal point before turning to the record, they're saying turn a blind eye to everything on our side of the ledger. And that's a very... And we do that when reviewing a judgment in the light most favorable... When the evidence is disputed. No, we do that when we review a judgment in the light most favorable to the plaintiff in this case because even when the evidence is undisputed, we don't give it the inferences that you might wish us to give it. We don't dispute, Your Honor. They get the benefit of all disputes, and they get the benefit of all reasonable inferences. But where there is undisputed evidence, we get the benefit of it if it's in our favor. If you look at the Wallace case that they cited in their brief, what does it say about that? It says that the court must review the entire evidentiary record and need only disregard all evidence favorable to the moving party that the jury is not required to believe. If the evidence is undisputed, the jury needs to believe it. But those cases occur in the context of us reviewing judgments by a jury, verdicts by a jury. They don't occur in the context of a judge overturning a jury verdict, do they? Summary judgment, JMAL, are the same exercise. Reeves v. Sanderson, the Supreme Court's decision in 2001, is the clearest case on this case. So tell me why the evidence doesn't show records. So now turning to the record, the district court pointed to five undisputed links. There are significantly more than that. And they have a theory of this is infringe-and-tell caught. Now, it is true there was a swift response to every takedown notice, but that is not all there is. All the following that I'm going to give you now is undisputed. It's undisputed there's an express policy against copyright infringement backed by contractual representations enforced by 30 to 50 people. And our case law says rather clearly when you know your policy is not working, that doesn't prevent a finding of records. You can't hide behind a policy if you don't enforce it. But if you'll allow me, I'll walk you through quickly about seven undisputed points from the Lee testimony that affirmatively foreclose anything close to willfulness. So then there's upfront review of every image connected with a product order. That is 20,000 images a day, 7.3 million images a year if you do the math. Three to five percent of those are flagged for things like copyright infringement and trademark offensive language. Now, it's undisputed Mr. Lee testified that Zazzle receives 12 to 15 takedown notices a month. That's 144 to 180 a year. That is .002 percent of the images associated with product orders. .002 percent. So the upfront review is working. No, that doesn't demonstrate the upfront review is working. It demonstrates that .002 percent of your orders are protested by people. It may well be that you're infringing every copyright in the world and the copyright owner doesn't notice it. It shows that you've put together a system, but in the case of Greg Young, the system didn't work. All right. Allow me to continue. Why doesn't Zazzle remove repeat offenders? Well, it does remove repeat offenders, and indeed the evidence is undisputed that it terminated several of the uploaders of the Greg Young images in this case. But not an uploader who had done 2,000 copyright violations. He was merely suspended. That's true, right? It is true. Wouldn't it make sense to have a zero policy tolerance for copyright infringers? I mean, considering the facts here? Your Honor, we're talking about willfulness review. The standard for liability is strict liability. Willfulness is something different. If there can't be occasional things that slip through the cracks, then a company like Zazzle can't effectively operate. But let's look at the numbers then. If you don't like my analogy to all the takedown notices. It's like saying I only got caught for robbing the bank once, and so I couldn't have robbed it on another occasion. Let's look at what Zazzle did in response to the takedown notices in this case. First of all, it's undisputed. Mr. Lee testified they were distributed to the supervisors whose job it is to give it to the team. It's undisputed. Mr. Lee said, I talked to several content reviewers about this. Now, they say, well, he couldn't swear from his personal knowledge that every single person got it. That's true, but it was distributed. And here's what the numbers show. In the first six months, when about half of their notices of infringement came, more than half of the infringing sales, $5,200 worth, happened in that first six months. Well, we're only talking about the five infringements for which there was willfulness found. So didn't they occur after the infringing notices came? There was some infringement that occurred after notices, but, Your Honor, it dropped by 86% after the first six months, and it dropped by 93% after that. I guess we were talking about the 2,000 violations. You know, maybe one or two violations is not reckless, but how are 2,000 violations by a single user insufficient to show reckless disregard or willful blindness? I mean, what would be sufficient under your standard? Your Honor, you might have, sloppiness could amount to negligence. There's no evidence in this record that if there had been some additional content reviewers or different technology that there wouldn't have been any different results. Would it have to be 5,000? Would it have to be 10,000? I mean, 2,000 is not. There can be, of course, Your Honor, there can be, you can have one image associated with thousands of products. And so that's why the numbers get big. Mr. Lee's testimony on this was that we regularly terminate people who are repeat offenders. Yes, they exercise discretion depending on the numbers, so there's no. . . Yes, but why couldn't a jury reasonably disbelieve that testimony in light of the evidence that for the guy who did it 2,000 times, you didn't terminate him? Because the statute requires a finding of recklessness as to these five images. And the case law, Unicolors, and other cases of this court do as well. And so the question is not even the policy as a whole. It's what happened with these five, and they dropped by 86 percent. Okay, so let's focus on these five for a second. I'm not sure you. . . Let me just accept your premise for a second. Focus on these five. After you were notified by them that these five were copyrighted and after they sent you their catalog because they said, we've had a problem here with you guys, and so we want to give you the pictures in advance of our catalog so we don't have to keep notifying you, you continue to infringe on these five, correct? There were some that slipped through the cracks, but, Your Honor, look at. . . Yes or no? I don't. . . There was. . . It's not a jury argument. There was infringement. You continue to infringe on these five. I understand. There were infringement after the notice. Okay, so why given that, when they warn you and then take the extra step of saying, here's the catalog, please stop infringing on my. . . on these five things, and you continue to do so, isn't that more than just negligence? Not at all, Your Honor. There was a swift response, and Mr. Young himself testified to this, to a swift response to every single takedown notice. There was evidence from the plaintiffs themselves where Zazzle took down something, and this is a vintage art posters category, travel posters, that are sometimes hard to tell the difference. Mr. Kern Erickson himself said in several instances these were very similar. So Zazzle takes something down. The plaintiff comes back and says, well, actually, that wasn't one of the infringing images. Please put it back up. There's nothing that says in this record that says that you could achieve perfection. There's nothing that says that a few more people working on this or had they used TinEye instead of the Google reverse image search technology, that they would have gotten it all. Even if there were such testimony, it might show that some standard of care was not satisfied. But the standard for recklessness is much higher. Let me ask you about the image, those catalog references. I'm just curious, why not allow your content review team to have an image-based search function for the platform? Your Honor, I'm so glad you asked. If you look at Mr. Beaver's testimony, he is the chief technology officer of Zazzle. At page 758 of the record, he says, and I quote, he talks about Google reverse image search, and he says this is available for free, and he says, quote, that's what our content management team uses, end quote. It's undisputed that the content management team here didn't just rely on word searches. They did reverse image searches as well. But it seems like it wasn't very effective. I don't know if they were doing it on Google, but I'm just trying to figure out, couldn't there have been a more effective way of having an internal search function that allows the content review team to search for the Zazzle, I guess what you call the platform for infringing products? Two answers to that, Your Honor. One legal, one factual. The first answer is ineffectiveness is not recklessness. It could conceivably amount to negligence, but it's not recklessness. Recklessness is having a cavalier attitude or willfully turning a blind eye to the infringement. The factual answer is that infringement dropped to $33 a month. These figures are collected on pages 29 to 30 of our brief. So you started out with $470 a month of infringing sales, and after the first round of notices in the last half of 2013, it dropped to $66 a month. Then it ultimately dropped to $33 a month. It was a 93% drop. Those are not numbers of a company that is saying, we don't want to hear about infringement. That may be why the jury didn't find willfulness as to the great majority of the works. But as to the five works that were infringed later, it seems that a careful jury could have looked at this and said, look, on most of them they weren't willful. But these are ones where after being warned, after being given the catalog, they still did it. Why isn't that sufficient for the jury? I have a question on a different area. They thanked Zazzle. They said, we're pleased with your response, which is not surprising given that they had cut it down to 7% of what it was. And I would note, contrast the cases in this court where this court has said, you can have recklessness. Louis Vuitton, 18 cease and desist letters. The defendant is allowing a website that says, here's where you go to get infringing goods. 18 cease and desist letters, no response from the defendant. Unicolors. What did the jury find in that case? I can't recall, Your Honor, whether. I thought that case was a case where they were arguing on appeal, that the jury should have found recklessness. That may have been a case where it was decided as a matter of law, Your Honor. But look at Unicolors. The defendant, quote, made no attempt to check into whether any of the designs it's used were subject to copyright. Freedman, the product forms, never explicitly asked about copyright at all. They did nothing to inform the customers you can't infringe. Look at the record here. Up front, told you can't infringe. Every single image is reviewed at the point where there's a product order. People are terminated regularly. The sales numbers drop by 93%. There's only a handful of even takedown notices that occur of these 7.3 million images. These numbers do not show a reckless company. At most, they might show negligence. I think you've made your point on that, and I want to ask you a question on a separate topic before your time expires. Your offer of judgment included an injunction, correct? Well, it didn't include an injunction. It included a monitoring requirement and a willingness to pay royalties. Right, and a willingness to pay royalties. And did the – I'm trying to figure out whether the result – put aside whether or not we add the $110,000 back or not. I'm trying to figure out how we look at the willingness to pay royalties as a part of an offer of judgment. I think that that would – that the district – In other words, you think what you were just saying is, look, we'd like to be licensed to use your stuff. And they said, no, we don't want to license you. So why doesn't that make the judgment less successful than the offer? Bear in mind, Your Honor, the plaintiffs did not get an injunction in this case. No, I understand. They didn't get an injunction. They got an injunction that was set aside. But my question is about the royalty thing. You're basically saying, gee, we'd like to have a license so we can pay your royalties. Right? That's what the offer of judgment says. It makes monitoring and payment of royalties part of the enforcement. Payment of royalties. Of course, you don't pay royalties to some – royalties are only required when there's a license, correct? Well, when there's – or infringement without it. Or infringement. And they said, we don't want royalties from you. We want you to stop. So why is the – why does their failure to accept the judgment make the result of this case, whatever the numbers end up being, less favorable to them than otherwise? Well, I think you have to look at the judgment they actually got. I would note that the district court, in the injunction that it ultimately withdrew, it acknowledged that perfection is not possible in this context. And essentially – and I would encourage you to study the Lee testimony carefully. I don't need to look at the testimony. I mean, you've gone through it several times. I'm asking a very specific legal question. The legal question I'm asking is this. You're saying, look, essentially in this judgment, if we should ever make a mistake in the future and use one of your items, we'd like to pay your royalties on it. And they said, no, we'd prefer to sue you if you ever use one of our items again in the future because we think we'll do better that way. And the truth is nobody ordered the end judgment. If they accepted your order, they would have had to have accepted that arrangement. The end judgment is not less favorable to them than the arrangement. And I think the best answer I can give you is that the district court thoughtfully considered this and still concluded that – Well, every case we get, the district court thoughtfully considered. Otherwise, you know, otherwise it would be easy. So that's not – I'm asking you a legal question. Isn't the judgment that they obtained more favorable to them with respect to the fact that they don't have to give you royalties? Well, Your Honor, I think you have to compare apples to apples. And yes, they got $350,000, but the offer of judgment was $525,000. And they did not get fees. But see, again, maybe I'm wrong on this. I'd like to know why I'm wrong. It's $525,000 plus a royalty arrangement, correct? Yes. And they said, we don't want your damn royalty arrangement. But they also didn't get an injunction, Your Honor. I guess I don't have any more of an answer to that. They may not have been – but focusing on that, weren't you less – wasn't the judgment more favorable to them if you look at the royalty thing? No, Your Honor. You have to compare the offer of judgment with what they got. And they did not get an injunction, so they don't get any royalties. They can sue in the future. But the district court analyzed that in analyzing this. I can't improve upon what he said. That's helpful. So your point is that because the injunction was eventually dissolved, there's no royalty arrangement under the judgment anyway? That's right. Okay. I'm just curious. Has Zazzle made any further changes to its content review system to minimize – Well, Your Honor, obviously that's not in the record. Zazzle is constantly improving its content review process. All right. Thank you very much. I'll give you one minute. I'll use the first second to see if there's any questions you have before I launch in. The short answer is that I want to make it clear in what he has now acknowledged is Zazzle hasn't infringed until caught business practice. That just doesn't work when you're infringing physical goods. And then with respect to searching, if the court looks at realistic ways to stop infringement, if the court looks at opening brief at page 7, the court did mention the 10-I program that can – it's like a fingerprint for images. Instead of saying here's a hot list that says here's a white male, here's something that says here's the fingerprint of a white male. We know exactly where it is. That's useful, and we – in our proposed injunction, we said if you do something like 10-I, then – and if something slips through the cracks, we're not going to come after you. We don't want litigation. Thank you. I think I'll end on that. Thank you. Thank you both. Mr. Quinn, Mr. Johnson, appreciate your presentations here this morning. The case of Greg Young Publishing v. Zazzle is now submitted.
judges: Murguia, Hurwitz, Guirola